IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MONICA LEE ABATE**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 1:17-cv-288-SPB |
| ) | |
| **WAL-MART STORES EAST, L.P.** ) | |
| **d/b/a WAL-MART STORE #2561,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in the above captioned matter is a petition by Intervenors Michael J. Koehler, Esquire and the law firm Nicholas, Perot, Smith, Koehler & Wall, P.C. ("Intervenors") for approval of a charging lien in the total amount of $83,184.15, representing attorneys' fees ($77,500.00) and costs ($5,684.15) incurred in connection with the underlying litigation. For the reasons that follow, the petition will be granted.[1]

### I.   Background

This civil action was commenced after the Plaintiff, Monica Lee Abbate, was struck by a ladder while on the premises of Defendant, Wal-Mart Stores East, L.P., d/b/a Wal-Mart Store #2561 ("Walmart"). Attorney Koehler was Plaintiff's counsel of record and filed the instant lawsuit against Walmart on her behalf.

---

[1] The Court had subject-matter jurisdiction over the underlying action and retains ancillary jurisdiction over the instant dispute. *See Novinger v. E.I. DuPont de Nemours & Co., Inc*. 809 F.2d 212 (3d Cir. 1987); *Walker v. Mankey*, No. 2:14-cv-1504, 2019 WL 7494209 at *1 (W.D. Pa. Aug. 7, 2019); *Frank v. Allstate Ins. Co.*, No. CV 14-1121, 2015 WL 13873969, at *1-2 (E.D. Pa. Sept. 2, 2015).

1

During the course of the litigation, WalMart made a settlement offer of $250,000, which defense counsel memorialized in a release agreement. *See* ECF No. 77-3. Plaintiff signed the last page of the release agreement on November 23, 2019, *see id.*; however, she later claimed, in a *pro se* letter to this Court, that she had been "bullied" into signing by Attorney Koehler and, moreover, was denied an opportunity to review the agreement in its entirety. *See* ECF No. 37.

On December 11, 2019, the Court held a hearing concerning Plaintiff's *pro se* correspondence. ECF No. 38. During those proceedings, Plaintiff confirmed that she was firing Attorney Koehler and would oppose the settlement. Mr. Koehler indicated at the hearing, and through subsequent correspondence, that he would be asserting a charging lien to recover his fees and costs. ECF No. 46 at 36; *see also* ECF Nos. 77-5 and 77-9. Defense counsel stated at the hearing that Walmart would be filing a motion to enforce the settlement, which it eventually did on February 27, 2020. ECF No. 47. In the meantime, Attorney John Knox entered an appearance on Plaintiff's behalf and continues to represent her in connection with the pending proceedings.

On November 30, 2020, the Court issued a Memorandum Opinion and Order granting Walmart's motion to enforce the settlement, with the exception of one paragraph in the Release Agreement which required a certification from Plaintiff's treating physician that no further medical treatment or services would be required relative to the injuries for which Plaintiff was suing Walmart. ECF No. 57 at 18-26; ECF No. 58. Plaintiff did not appeal the Court's ruling.

Walmart subsequently disbursed $16,268.61 to the collection agency for Medicare in satisfaction of a lien that Medicare held relative to the settlement funds. Walmart paid the remainder of the proceeds to Attorney Knox on Plaintiff's behalf, less the disputed amount of $83,184.15, which Attorney Koehler claimed was subject to his charging lien. By Memorandum

Order dated May 11, 2021, the undersigned granted Walmart's motion to pay the disputed funds into Court. ECF No. 69; *see also* ECF Nos. 70, 71, 72.

The Court subsequently granted Attorney Koehler and the Law Firm leave to intervene in these proceedings for purposes of filing their petition for a charging lien. ECF No. 75. Intervenors' petition was filed on July 27, 2021 and, following briefing by the parties, it is now ripe for adjudication. *See* ECF Nos. 76, 77, 78, 79.

## II.     Discussion

Pursuant to *Recht v. Urban Redevelopment Authority of City of Clairton*, 168 A.2d 134 (Pa. 1961), Pennsylvania courts utilize a five-part test to determine the enforceability of a charging lien. In order for a charging lien to be recognized and applied, it must appear:

> (1) that there is a fund in court or otherwise applicable for distribution on equitable principles,
>
> (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid,
>
> (3) that it was agreed that counsel look to the fund rather than the client for his compensation,
>
> (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and
>
> (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

*Recht,* 168 A.2d at 138–39; *see also Shenango Sys. Solutions, Inc. v. Micro-Systems, Inc.*, 887 A.2d 772, 774 (Pa. Super Ct. 2005).

Here, there is no dispute that conditions 1, 2, and 4 are met. There is a fund in court for distribution on equitable principles, as Walmart has deposited the disputed $83,184.15 into Court pending resolution of the Intervenors' petition. Moreover, there is no dispute that Mr. Koehler's services operated substantially or primarily to secure the settlement fund, out of which

3

Intervenors now seek to recover the disputed $83,184.15 payment.  In addition, the amount of the claimed charging lien is limited to the costs and fees that Mr. Koehler incurred in the underlying personal injury litigation, which gave rise to the fund.

Plaintiff nevertheless contends that the third and fifth conditions outlined in *Recht* are not satisfied.  As to the third condition, Plaintiff posits: "there is **no agreement** that Attorney Koehler look to any fund where the settlement proceeds are held, rather than looking to the Plaintiff for his compensation due [to] the fact that **Plaintiff terminated her agreement for legal representation with Previous Counsel** on December 11, 2019."  ECF No. 78 at 8 (emphasis in the original).

This line of argument is unpersuasive.  In this case, Intervenors entered into an agreement with Plaintiff whereby they would be paid attorneys' fees, on a contingent basis, in the amount of "33.33 percent of all sums collected if settled prior to trial[.]" ECF No. 76-1 (all-caps typeface omitted).[2]  The parties further agreed that Intervenors would be "reimbursed from the settlement for all out-of-pocket costs" associated with their representation.  *Id*. (all-caps typeface omitted). The parties plainly contemplated from the outset that, in the event Plaintiff achieved a settlement of her lawsuit against Walmart, Mr. Koehler and his law firm would be paid from the settlement fund, as opposed to billing Plaintiff directly under an hourly fee-for-services arrangement. Plaintiff's subsequent decision to fire Attorney Koehler did not alter the terms of their contract as it relates to fees and costs previously incurred.

Plaintiff's position relative to the fifth *Recht* condition is predicated upon her prior argument relative to the third condition.  "[S]ince the third factor in Recht cannot be satisfied," Plaintiff reasons, "there are no equitable considerations which necessitate the recognition and

---

[2] In fact, the fee which Intervenors now seek to recover represents only thirty-one (31%) of the settlement proceeds.

4

application of the charging lien." ECF No. 78 at 8 (internal quotation marks omitted). For the reasons, discussed, however, the Court finds that the third *Recht* condition is satisfied. Therefore, Plaintiff's logic fails.

In opposing Intervenors' petition, Plaintiff refers this Court to *Walker v. SCI Employee Mankey*, Case No. 2:14-CV-01504-LPL, 2019 WL 7494209, 2019 U.S. Dist. LEXIS 224496 (W.D. Pa. Aug. 7, 2019). In that case, two different legal counsel simultaneously participated in the prosecution of a civil action, pursuant to a fee-splitting agreement. The attorney originally retained by the plaintiff -- Alvin F. De Levie ("de Levie") -- brought additional counsel into the case -- The Beasley Firm, LLC ("Beasley"). The latter firm was later terminated and its involvement in the case ended in the midst of discovery. The court ultimately denied Beasley's motion for a charging lien because it found that "Beasley's services did not operate substantially or primarily to secure the funds at issue," as the plaintiff's original counsel (de Levie) had conducted most of the depositions, defended and won summary judgment, and ultimately achieved the settlement. 2019 WL 7494209, at *2. Because Beasley could not satisfy the second "*Recht*" factor, it also could not show that "[t]he equitable considerations . . . necessitate the recognition and application of the charging lien. *Id.* at *3. "To recover under this analysis," the court reasoned, "Beasley would have to have satisfied all of the factors and it falls short of satisfying the second factor." *Id.* Nevertheless, although the court concluded that Beasley was not entitled to compensation via a charging lien, it found that Beasley *was* entitled to compensation pursuant to an oral fee-splitting agreement that Beasley had entered into with de Levie. *Id.* at *3-6.

Ultimately, Plaintiff's reliance on *Walker* is unavailing. Plaintiff highlights the fact that the attorney asserting the charging lien (Beasley) terminated his services in the middle of

5

discovery and, as such, his services "did not operate substantially or primarily to secure the funds at issue." ECF No. 78 at 9 (citation and additional quotation marks omitted).  That fact materially distinguishes *Walker* from the instant case.  Because Mr. Koehler was Plaintiff's only counsel from the inception of the litigation up to and including the point when settlement was reached, his services plainly operated "substantially" and "primarily" to achieve the settlement.

Plaintiff also finds significance in the fact that, once Beasley's representation ended in the *Walker* case, the court looked to the absence of any direct fee agreement between the client and Beasley in evaluating the third *Recht* factor.  Again, this fact is materially distinguishable, since there *was* a written fee letter in this case -- signed by both Mr. Koehler and the Plaintiff -- indicating that Mr. Koehler would be paid from any future settlement proceeds. Thus, the third *Recht* factor is satisfied.  Plaintiff nevertheless reads *Walker* for the proposition that, once a fee agreement with a prior attorney is terminated, that attorney can no longer point to the terminated fee agreement as evidence that counsel was meant to look to the fund, rather than to the client, for his compensation. ECF No. 78 at 9.  Plaintiff draws this inference from the fact that, in *Walker,* Beasley would not have satisfied the third *Recht* factor, but for his fee-splitting arrangement with de Levie.  However, Plaintiff's interpretation of *Walker* depends upon a misreading of the facts:  what the *Walker* court referred to in its analysis was not the absence of a *post-termination* fee agreement *per se*, but rather the absence of any fee agreement *at all* between the client and Beasley, as Attorney de Levie had apparently retained Beasley's services to assist with his prosecution of the plaintiff's case.  *See* 2019 WL 7494209, at *2-3.  In this Court's view, neither *Recht* nor *Walker* can be read as placing dispositive importance on the existence or absence of a *post-termination* fee agreement between a plaintiff and a subsequently terminated lawyer.

6

Plaintiff also reads *Walker* for the proposition that, when even one of the *Recht* factors is not met, a charging lien is not enforceable. Here, for the reasons discussed, the Court finds that all necessary conditions are satisfied. Accordingly, Intervenors' lien is valid and enforceable by this Court.

Plaintiff's final argument is that equitable considerations weigh against enforceability of the charging lien because Mr. Koehler is allegedly proceeding here with "unclean" hands. *See Brandywine Savings and Loan Ass'n v. Redevelopment Auth. of Chester Cty.,* 514 A.2d 673, 676 (Pa. Commw. Ct. 1986) ("He who comes into equity must come with clean hands."). In essence, Plaintiff suggests that Attorney Koehler fraudulently induced her to sign a document that she did not know was a release. *See* ECF No. 78 at 10. And at the very least, she claims, Mr. Koehler "had [her] sign a document which he purports is the Release containing a requirement that he fully knew Plaintiff could not meet." ECF No. 78 at 14. Here, Plaintiff is referring to the fact that her physician would not certify that all relevant medical treatments had concluded, as was contemplated by the terms of the Release Agreement. She states that Walmart's attorney and Mr. Koehler both acknowledged on the record that by signing the Release without the certification from Plaintiff's physician, there was a strong possibility "Medicare comes back and decides not to pay for some future medical treatment because of -- they believe it should have been subject to a set-aside...." *Id*. (ellipsis in the original). Thus, Plaintiff insists, she was "placed at medical and financial risk for settling a case when her ongoing medical treatment would not be paid for into the future." *Id*.

While the undersigned appreciates Plaintiff's frustration concerning the resolution of her underlying lawsuit, the Court finds no merit in her present arguments. In resolving Walmart's motion to enforce the settlement agreement, the Court found -- based upon the record before it --

7

that Mr. Koehler had express authority to enter into the subject settlement agreement, the terms of the settlement were sufficiently definite to allow specific enforcement, and the agreement was supported by adequate consideration. ECF No. 57 at 12, 26. Additionally, the Court found that there had been no clear showing of fraud, duress or mistake in connection with the Plaintiff's execution of the agreement, as would justify setting aside the settlement. *Id*. at 13, 15-16, 26. To the extent Plaintiff wishes to revisit these findings at the present time, the Court declines to do so.

Nor is the Court persuaded that the doctrine of "unclean hands" otherwise precludes Intervenors' requested relief.

> [A] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.

*Eye Ctr. of Cent. Pennsylvania, LLP v. Fassero*, 240 A.3d 904 (Pa. Super. Ct. 2020), *appeal denied*, No. 549 MAL 2020, 2021 WL 855173 (Pa. Mar. 8, 2021) (quoting *Terraciano v. Dep't. of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000)) (alteration in the original). The burden of proving unclean hands is on Plaintiff. *Id*. (citing *Montgomery Bros., Inc. v. Montgomery*, 112 A. 474, 475 (Pa. 1921)). "Even where a party has acted with unclean hands, the trial court 'is free to refuse to apply the unclean hands doctrine if consideration of the record as a whole convinces the court that its application will cause an inequitable result.'" *Id*. (quoting Matenkoski v. Greer, 213 A.3d 1018, 1028 (Pa. Super. Ct. 2019)). In this case, notwithstanding Plaintiff's disappointment with the terms of her settlement, the Court is not persuaded that any actions on the part of Attorney Koehler justify the denial of the equitable relief the Intervenors now seek. Having fully considered all of Plaintiff's objections, the Court is

satisfied that equitable considerations necessitate the recognition and application of the subject charging lien.

**III.     Conclusion**

Based upon the foregoing reasons, the Intervenors' Petition to Approve Charging Lien will be granted. An appropriate order follows.

SUSAN PARADISE BAXTER
United States District Judge